**WICHITA COUNTY, TEXAS, Petitioner,**

v.

**Allen HART and Ernie Williams, Respondents.**

No. 95–0003.

Supreme Court of Texas.

Argued Sept. 6, 1995.

Decided Feb. 9, 1996.

Rehearing Overruled April 12, 1996.

Ann Clarke Snell, Valerie P. Kirk, Austin, for Petitioner.

R. John Cullar, Waco, John A. Crane, Austin, for Respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which all Justices join.

In this Texas Whistleblower Act case, we consider whether the Act controls venue in a suit against a county. The court of appeals affirmed the trial court's ruling that the Whistleblower Act's venue provision governed. *See* 892 S.W.2d 912, 919–20. We reverse the judgment of the court of appeals and remand the case for a new trial. Because of our remand and in the interest of judicial economy, we also consider the proper definition of "good faith" as used in the Whistleblower Act.

## I. Background

Allen Hart and Ernie Williams worked as deputies in the Wichita County Sheriff's Department. In February 1989, Hart and Williams told an investigator for the county's district attorney's office and an agent for the Federal Bureau of Investigation that they believed Sheriff Thomas Callahan had broken the law. The investigator spoke with Callahan on May 1, 1989. Callahan fired Hart that day and Williams two days later.

Hart and Williams sued the county, contending that the sheriff fired them in retaliation for reporting a violation of law. They filed their suit in Travis County under the venue provisions of the Texas Whistleblower Act. *See* TEX.GOV'T CODE § 554.007 (1994).[1]

---

1. Hart and Williams sued under a statute that the Legislature repealed and then codified in the Government Code in 1993. *See* Act of June 19, 1983, 68th Leg., R.S., ch. 832, § 3, 1983 Tex. Gen.Laws 4751, 4752, *repealed by* Act of May 22, 1993, 73d Leg., R.S., ch. 268, §§ 1, 47, 1993 Tex.Gen.Laws 609, 986 (codified at TEX.GOV'T CODE § 554.001–.009 (1994)). Because the Legislature did not substantively alter the provisions when it codified them, we will cite the 1994 Government Code.

In 1995, the Legislature amended the Whistleblower Act's venue provision for actions taken against a public employee after June 15, 1995. *See* Act of June 15, 1995, 74th Leg., R.S., ch. 721, § 4, 1995 Tex.Gen.Laws 3812, 3813 (current version at TEX.GOV'T CODE § 554.007 (Supp.1996)). Under the amended provision, only a state employee has the option of suing in Travis County. *Id.*

The county then moved to transfer venue to Wichita County under a mandatory county venue provision. *See* TEX.CIV.PRAC. & REM. CODE § 15.015. The trial court denied the motion. After a jury trial, the court rendered judgment on the verdict for Hart and Williams, and the court of appeals affirmed.

## II. Venue

■ A defendant raises the question of proper venue by objecting to ₁a plaintiff's venue choice through a motion to transfer venue. *See* TEX.R.CIV.P. 86; *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex.1994). The fact that mandatory venue lies in another county provides one ground for a motion to transfer venue. *See* TEX.R.CIV.P. 86(3)(b). If the plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion. *See Langdeau v. Burke Inv. Co.*, 163 Tex. 526, 358 S.W.2d 553, 556 (1962). A trial court's erroneous denial of a motion to transfer venue requires reversal of the judgment and remand for a new trial. *See* TEX. CIV.PRAC. & REM.CODE § 15.064(b); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex.1993).

■ Here, the trial court was confronted with two venue provisions. The county argues that a Civil Practice and Remedies Code provision controls.[2] Under that code, "[a]n action against a county *shall be brought* in that county." TEX.CIV.PRAC. & REM.CODE § 15.015 (emphasis added). As the court of appeals noted, our state's courts have long interpreted this provision as mandatory: "The first legislature of the state made it the law in Texas that all suits against a county shall be instituted in some court of competent jurisdiction within such county. To this mandatory provision there seems to be no exception." *Montague County v. Meadows*, 31 S.W. 694, 694 (Tex.Civ.App.—Fort Worth

1895, writ ref'd) (citations omitted), *cited in* 892 S.W.2d at 917.

While conceding that the county venue provision is mandatory, Hart and Williams rely on the Whistleblower Act's venue provision, which provided at the time they filed suit that "[a] public employee *may sue* under this chapter in a district court of the county in which the employee resides or in a district court of Travis County." TEX.GOV'T CODE § 554.007 (1994) (emphasis added). They contend that the Whistleblower Act's venue provision is mandatory and trumps the mandatory county venue provision. We disagree.

■ When considering venue, we have noted that the Legislature's use of the word "shall" in a statute generally indicates the mandatory character of the provision. *See Bachus v. Foster*, 132 Tex. 183, 122 S.W.2d 1058, 1060 (1939). In 1983, two days before it passed the Whistleblower Act, the Legislature reorganized the general venue statute into five categories: "General Rule," "Mandatory Venue," "Permissive Venue," "General Provisions," and "Suits Brought in Justice Court." *See* Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 1, 1983 Tex.Gen.Laws 2119, 2119–24. It placed the county venue provision in the "Mandatory Venue" subchapter along with six other provisions, each stating where a suit "shall be brought." *See id.* at 2120 (current versions at TEX.CIV.PRAC. & REM.CODE §§ 15.011–.017). Since the 1983 reorganization, the Legislature has added new sections to the mandatory venue subchapter, each also stating where a suit "shall be brought." *See* TEX.CIV.PRAC. & REM.CODE §§ 15.0115, 15.018 (Supp.1996). The Legislature also placed ten provisions within the "Permissive Venue" subchapter in 1983, each stating where a suit "may be brought." *See* Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 1, 1983 Tex.Gen.Laws 2119, 2120–23 (current versions at TEX.CIV.PRAC. & REM.CODE §§ 15.031–.040).[3] And, as noted, the Whis-

2. Amici curiae urging that we consider a similar position include the Texas Association of Counties, the Texas Municipal League, the Texas City Attorney Association, Dallas County, Harris County, and Tarrant County.

3. One of the provisions the Legislature originally placed in the "Permissive Venue" subchapter

contained both the phrases "may be brought" and "shall be brought." The Legislature repealed that provision in 1987. *See* Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 1, 1983 Tex.Gen.Laws 2119, 2121–22, *repealed by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 4, § 2, 1987 Tex.Gen.Laws 52, 53.

tleblower Act's venue provision states where a plaintiff "may sue." *See* TEX.GOV'T CODE § 554.007 (1994). The Legislature's use of the permissive term "may" in the Whistleblower Act's venue provision, in light of its contemporaneous reorganization of the venue statute, strongly suggests that the Act's venue provision is permissive.

■ We have long recognized that when the Legislature passes two acts in the same session, we must construe the two acts in harmony with one another. *See Cain v. State,* 20 Tex. 355, 359 (1857). We have consistently adhered to this rule of statutory construction, noting that a "statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex. 1990) (citation omitted). This rule "applies with ... force to acts passed at the same session." *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813, 817 (1947). Therefore, we conclude that when the Legislature used the term "may" in the Whistleblower Act's venue provision, it consciously chose language consistent with the permissive venue subchapter of the Code.

Hart and Williams urge us to disregard this rule of construction. Adopting the court of appeals' reasoning, they contend that the Whistleblower Act's provision must be considered mandatory given both the object and nature of the Act and the potential consequences of calling the provision permissive. *See* 892 S.W.2d at 919. The court of appeals first concluded that because the Whistleblower Act allowed the county of the plaintiff's residence to serve as a venue choice and because during the same session the Legislature had rejected the county of the plaintiff's residence as an option in the general venue statute, the Legislature intended the plaintiffs' special venue options under the Whistleblower Act to be mandatory. *See id.* at 920. Second, the court of appeals concluded that one of the purposes of the Whistleblower Act "is to protect government employees from retaliation after reporting their employers' violations of the law," *see id.,* and thus inferred that the Legislature included Travis

County as a mandatory, "safe harbor" venue option.

We disagree with both assumptions. The Legislature, within two days of its passage of the Whistleblower Act, enacted several special venue statutes under the "permissive" heading that allowed plaintiffs to file suit in the county of their residence. *See* Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 1, 1983 Tex.Gen.Laws 2119, 2120–23 (codified at TEX.CIV.PRAC & REM.CODE §§ 15.032–.034, 15.036–.037, 15.040). Given these permissive provisions, we cannot conclude that the Legislature's decision to allow plaintiffs to file suit in the county of their residence indicated a desire to make the Whistleblower Act's venue provision mandatory. Also, nothing in the legislative history indicates that by including Travis County as a venue option the Legislature intended the Whistleblower Act's venue provision to be mandatory. In deciding that the Travis County venue provision should be construed as a "safe harbor" or "means or area of protection," [4] the court of appeals cited no other statutes that contained such a provision, and the plain language of the statute as well as the legislative history reveal nothing describing an intent to create such a "safe harbor."

Hart and Williams alternatively contend that we should adopt the reasoning contained in the concurring opinion in the court of appeals. *See* 892 S.W.2d at 930–32 (Powers, J., concurring). The concurring opinion argues that the Whistleblower Act's venue provision mandates exclusive jurisdiction in either the county of the plaintiff's residence or Travis County. *See id.* The concurring opinion relies on decisions of this Court in which we held that when a statute creates a right and provides a remedy for its enforcement, it has provided an exclusive remedy, and when it confers jurisdiction on a particular court, it has conferred exclusive jurisdiction. *See id.* at 931 (citing *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926)).

■ We agree with the concurring opinion that the Whistleblower Act creates a right and provides a remedy unknown to the common law of Texas. However, we see no

---

4. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 778    (2d ed. 1995).

indication that the Legislature intended the Whistleblower Act's venue provision to be jurisdictional. As the majority opinion in the court of appeals noted, the language of some laws unambiguously indicates that the Legislature intended them to be jurisdictional in nature. *See* 892 S.W.2d at 917. If the provision's wording does not indicate whether the Legislature wanted courts to consider it jurisdictional, we must resolve the issue by applying rules of statutory construction. *See Brown v. Owens,* 674 S.W.2d 748, 750 (Tex. 1984).

Here, the plain language of the Whistleblower Act's provision does not mention jurisdiction. *See* Act of June 19, 1983, 68th Leg., R.S., ch. 832, § 3, 1983 Tex.Gen.Laws 4751, 4752. When the Legislature passed the Whistleblower Act, the section headings for the part of the bill where the venue section appears read "REMEDY; BURDEN OF PROOF; VENUE." *Id.* Section 3(a)— "Remedy"—described a plaintiff's potential recovery under the Whistleblower Act, including "injunctive relief, damages, or both." *Id.* Section 3(b)—"Burden of Proof"—described the "burden of proof" and "rebuttable presumption" used in the suit. *Id.* And Section 3(c)—"Venue"—contained the provision stating that a public employee "may bring suit." *Id.*

Additionally, we disagree with the broad reading the concurring opinion gives *Mingus.* In that case, our analysis did not stop after we articulated a general rule of statutory construction in interpreting a statute containing the unmistakably mandatory phrase "shall bring suit." *See Mingus,* 285 S.W. at 1087. Instead, we employed a functional analysis in which we looked to practical considerations that may have factored into the Legislature's decision:

> The language used is mandatory, and its purpose evident. Such a suit of necessity involves the fact of the accident, the issue of the injury, and the wages of the claimant; all of which may be established with less expense, trouble, and delay in the county where the injury occurred than in any other county.

*Id.* Here, the language of the provision is clearly permissive. Moreover, the issues about the facts of the incidents can be established with far less expense in Wichita County than Travis County. And, as we noted above, the legislative history reveals no hint that jurisdiction was intended to be a part of the Whistleblower Act.

In a more recent opinion cited by the concurring opinion, we examined the judicial review of administrative opinions and the purpose behind the Legislature's design before we determined that a provision should be considered jurisdictional. *See Grounds v. Tolar Indep. Sch. Dist.,* 707 S.W.2d 889, 891 (Tex.1986), *cited in* 892 S.W.2d at 931 (Powers, J., concurring). In *Grounds,* we considered whether a provision stating that a party "may" appeal an administrative decision to a Travis County trial court indicated the permissive nature of the provision. *See id.* However, that case was an administrative appeal brought under the Administrative Procedure and Texas Register Act (APTRA), which delineated a specific system of judicial review of administrative decisions and provided for exclusive jurisdiction in a Travis County trial court "[u]nless otherwise provided by statute." *See id.* (citing APTRA § 19(b) (current version at TEX.GOV'T CODE § 2001.176(b))). After analyzing the statutes and their legislative intent, we concluded that Travis County trial courts had exclusive jurisdiction over the case because to hold otherwise would abandon the carefully-crafted system of judicial review of agency decisions. *See id.* at 891–92. None of those considerations are present here.

Therefore, we hold that the trial court committed reversible error when it overruled the county's motion to transfer venue because Hart and Williams filed their suit in Travis County under a permissive venue statute.

### III. Good Faith

Because we remand this case and in the interest of judicial economy, we also consider the proper definition of "good faith" as used in the Whistleblower Act.[5] A trial court

---

5. Amici curiae urging that we consider this issue

include the Texas Association of Counties, the

must submit explanatory instructions and definitions that will assist the jury in rendering a verdict. *See* TEX.R.CIV.P. 277. Under the Whistleblower Act, a "state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who *in good faith* reports a violation of law to an appropriate law enforcement authority." TEX.GOV'T CODE § 554.002 (emphasis added). The Whistleblower Act does not define "good faith." The trial court submitted the following definition to the jury: " 'Good faith' means honesty in fact in the conduct concerned. A report of a violation of law may be in good faith even though it is incorrect, as long as the belief is not unreasonable." *See* 892 S.W.2d at 921 n. 11. The county had proposed the following definition:

> "Made in good faith" means (1) that the employee undertook to report the activities in the workplace in good faith rather than as a result of some less admirable motive such as malice, spite, jealousy, or personal gain and (2) the employee had reasonable cause to believe that the activities reported were a violation of law.

*Id.* The court of appeals held that the trial court did not abuse its discretion by denying the county's proposed instruction, noting that "the *focus* of the good-faith requirement is the employee's belief that the reported conduct violates the law." *Id.* at 921.

We have previously addressed the proper scope of the term "good faith" in other contexts. *See, e.g., Holloway v. Skinner,* 898 S.W.2d 793, 796 n. 3 (Tex.1995) (discussing a defendant's belief in the validity of his act when determining whether he acted in "good faith"); *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 793–94 (Tex.1994) (using both an "honesty in fact" component and a "good faith" component when discussing the reporting of criminal activity in a malicious prosecution action); *Maxey v. Citizens Nat. Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex. 1974) (using both an "honesty in fact" and a "good faith" component). The U.S. Supreme Court also grappled with this issue when it

considered whether school officials could receive immunity from damages in a civil rights action brought under section 1983 by expelled students. *See Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975) (construing 42 U.S.C. § 1983). The district court had instructed the jury that officials could only be held liable if they had acted with complete malice when carrying out the expulsions. *Id.* at 314, 95 S.Ct. at 996 (citing *Strickland v. Inlow,* 348 F.Supp. 244, 248 (W.D.Ark.1972)). The court of appeals reversed, holding that the officials could be liable if they did not act in "good faith" and that the good faith test is purely objective. *See id.* (citing 485 F.2d 186, 191 (8th Cir.1973)). The Court, facing what it described as a showdown between "an 'objective' versus a 'subjective' test of good faith," held that "the appropriate standard necessarily contains elements of both [tests]. The official himself must be acting sincerely and with a belief that he is doing right, but an act ... can[not] be ... justified by ignorance or disregard of settled, indisputable law...." *Id.*

■ Although the *Wood* Court's discussion of "good faith" came in an official immunity context, we believe that its balancing of public and private concerns illustrates an appropriate approach for "good faith" in the whistleblower context. The Whistleblower Act protects public employees who attempt to report illegal activity. At the same time, public employers must preserve their right to discipline employees who make either intentionally false or objectively unreasonable reports. Therefore, we agree with the rationale used by the *Wood* Court that an appropriate explanation of "good faith" can accommodate both subjective and objective components. Today, we adopt the following definition, which we believe achieves a fair balance between the competing interests: 'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience. The first part of

Texas Association of School Boards, the Texas Association of School Administrators, the Texas Council of School Attorneys, the Texas Municipal League, the Texas City Attorney Association, and Harris County.

the definition embodies the "honesty in fact" part of the trial court's definition in this case. This element ensures that employees seeking a remedy under the Whistleblower Act must have believed that they were reporting an actual violation of law. The second part of the definition ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, an employer that takes prohibited action against the employee violates the Whistleblower Act only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law.

Hart and Williams urge us to adopt a standard that would determine the reasonableness of a report without regard to the reporting employee's training or experience. They note that none of the courts of appeals that have considered the "good faith" issue have concluded that trial courts should use different standards for different employees. *See, e.g., Texas Dep't of Human Servs. v. Hinds*, 860 S.W.2d 893, 897 (Tex.App.— Houston [1st Dist.] 1993), *rev'd on other grounds*, 904 S.W.2d 629 (Tex.1995); *Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 150–51 (Tex.App.—Austin 1993, writ denied); *City of Houston v. Leach*, 819 S.W.2d 185, 194 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Lastor v. City of Hearne*, 810 S.W.2d 742, 743–44 (Tex.App.—Waco 1991, writ denied). However, we believe that a workable, fair standard to determine if a report was made in "good faith" must take into account differences in training and experience. A police officer, for example, may have had far more exposure and experience in determining whether an action violates the law than a teacher or file clerk. *Cf. City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994) (applying the "good faith" element of official immunity in police pursuit cases by adopting a definition that asks whether "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public").

The county, on the other hand, urges us to adopt a definition of good faith that revolves around an employee's subjective motive in making the report. The county argues that the Legislature modeled the Whistleblower Act on other whistleblower statutes and that the Act should therefore be construed in accordance with interpretations that courts outside our state have given "good faith." However, the Legislature passed the Whistleblower Act for the "protection of public employees who report a violation of law" and did not include language indicating that the reporting employee's motivation in and of itself should obviate the Act's protection. *See* Act of June 19, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen.Laws 4751, 4751. Furthermore, no clear consensus has emerged from other courts on the issue of whether motivation is relevant to "good faith." *Compare Fiorillo v. U.S. Dep't of Justice*, 795 F.2d 1544, 1550 (Fed.Cir.1986) ("[T]he primary motivation of the employee must be the desire to inform the public on matters of public concern, and not personal vindictiveness.") *and Wolcott v. Champion Int'l Corp.*, 691 F.Supp. 1052, 1059 (W.D.Mich.1987) ("Those availing themselves of [a whistleblower act's] protection should be motivated, at least in part, by a desire to inform the public about violations of laws and statutes, as a service to the public as a whole.") (citation omitted) *with LaFond v. General Physics Serv. Corp.*, 50 F.3d 165, 173 (2d Cir.1995) (holding that a plaintiff met his prima facie burden of showing "that he engaged in a protected activity" by merely reporting "suspected violations of federal law") *and Melchi v. Burns Int'l Sec. Servs., Inc.*, 597 F.Supp. 575, 583 (E.D.Mich.1984) ("The Court believes it is reasonable to conclude that the Michigan legislature … meant to bring within the Act's protections an employee's subjective good faith belief that he was reporting a violation of law.").

We believe the definition we adopt today meets many of the concerns that the county and amici curiae express. For example, an employee motivated almost entirely by malice when making the report may honestly, though falsely, believe that a violation of law has occurred, but only if a reasonable person with the same level of training and experience would have made the report will the employee enjoy the relief the Whistleblower

Act provides. On the other hand, we do not believe that we should adopt an absence of malice standard for "good faith." The fact that an employee harbors malice toward an individual should not negate the Whistleblower Act's protection if the employee's report of a violation of law was honestly believed and objectively reasonable given the employee's training and experience.

## IV. Conclusion

We hold that the trial court committed reversible error by denying Wichita County's motion to transfer venue. Therefore, we reverse the judgment of the court of appeals and remand the case to the trial court. We also hold that the appropriate definition for "good faith" as used in the Whistleblower Act is that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience.