

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-027-CV

RUTH GROOMER                                                         APPELLANT

V.

TEXAS DEPARTMENT OF FAMILY                                            APPELLEE
AND PROTECTIVE SERVICES

------------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, Appellant Ruth Groomer asserts that the trial court erred by granting summary judgment to Appellee Texas Department of Family and Protective Services ("TDFPS"). We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

In August 2007, Groomer, a TDFPS employee, sued TDFPS under the Texas Whistleblower Act,[2] alleging in her original petition that she became aware of several incidents of illegal activity or conduct by her supervisors and that, upon reporting this conduct, her supervisors retaliated through adverse personnel actions and conduct against her. Specifically, she alleged that Supervisor Colleen Sells "illegally extorted" a $1,500 loan from Groomer in 2003 and then failed to repay it for a year and that Supervisor Myra McClacherty used office furniture for her personal use and used state employees on state time to help her move into her private residence in 2006. The following is a partial timeline of this case's procedural history:

| | |
|---|---|
| August 2007 | Groomer files her original petition. |
| October & December 2007 | Groomer responds to TDFPS discovery. |
| April 1, 2008 | Scheduling order entered, setting August 29, 2008, as the discovery deadline; September 12, 2008, as the deadline for motions for summary judgment; and November 3, 2008, as trial date.[3] |

---

[2] *See* Tex. Gov't Code Ann. § 554.002 (Vernon 2004).

[3] The trial court sent the parties a "Notice of Court's Intention to Dismiss," stating that it would dismiss the case for want of prosecution unless, among other things, a trial scheduling order was signed before April 4, 2008.

| | |
|---|---|
| June & July 2008 | Additional discovery from Groomer to TDFPS. |
| September 4, 2008 | TDFPS files no-evidence motion for summary judgment. |
| September 17, 2008 | Hearing on TDFPS's no-evidence motion for summary judgment is set for October 23, 2008. |
| October 7, 2008 | Deposition date for depositions of Rhoda Bailey, Colleen Sells, and Kelly Bradford per subpoenas issued September 25, 2008. |
| October 16, 2008 | Response to no-evidence motion for summary judgment is due, but none is filed.[4] *See* Tex. R. Civ. P. 166a(c). |
| October 22, 2008 | Amended Scheduling order entered, setting January 23, 2009, as the new discovery deadline, February 6, 2009, as the new deadline for dispositive motions, and April 6, 2009, as the new trial date. |
| October 23, 2008 | First scheduled hearing on TDFPS's no-evidence motion for summary judgment. Groomer fails to respond or file a motion for an extension. |
| October 30, 2008 | Second hearing on TDFPS's no-evidence motion for summary judgment is set for December 1, 2008. |

---

[4] On October 21, 2008, TDFPS sent Groomer a letter requesting that she submit a response to its no-evidence motion for summary judgment before the hearing set for October 23, 2008, but Groomer failed to do so.

| October 31, 2008 | Trial court orders Groomer to respond to TDFPS's no-evidence motion for summary judgment by November 6, 2008. |
|---|---|
| November 7, 2008 | Groomer files response to TDFPS's no-evidence motion for summary judgment. |
| November 13, 2008 | Groomer files amended response to TDFPS's no-evidence motion for summary judgment. |
| December 1, 2008 | Trial court enters an order granting TDFPS's no-evidence motion for summary judgment.[5] |

This appeal followed.

### III. Discovery

In her second issue, Groomer complains that granting the summary judgment was improper because the parties had not completed discovery. When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance.

---

[5] We observe that the order not only states that the trial court heard the motion on October 23, 2008, but also that the trial court considered "the pleadings, motion, response[,] and arguments of counsel" before it granted the motion. Neither party's brief explains this incongruity with the timeline set out above; however, as the second hearing on the motion was set for December 1, 2008, and the order was signed December 1, 2008, we infer that the parties merely failed to provide the trial court with an updated order from the first scheduled hearing on October 23, 2008.

4

*Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex. 1996); *see also*

*Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 662 (Tex. 2009) (stating that

*Tenneco* applies to cases in which the parties conducted formal discovery and

seek time for additional discovery).  The record does not reflect that Groomer

did either.  Therefore, we overrule her second issue.

## IV. Summary Judgment

In her first issue, Groomer asserts the trial court erred by granting

TDFPS's no-evidence motion for summary judgment because she provided

sufficient evidence in her response to defeat the motion.

## A. Standard of Review

After an adequate time for discovery, the party without the burden of

proof may, without presenting evidence, move for summary judgment on the

ground that there is no evidence to support an essential element of the

nonmovant's claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must

specifically state the elements for which there is no evidence.  *Id.; Johnson v.*

*Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).  The trial court

must grant the motion unless the nonmovant produces summary judgment

evidence that raises a genuine issue of material fact.  *See* Tex. R. Civ. P.

166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.

2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

**B. TDFPS's Grounds for Summary Judgment**

The Texas Whistleblower Act provides,

A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

Tex. Gov't Code Ann. § 554.002(a).

A report is made to an "appropriate law enforcement authority" if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law. *Id*. § 554.002(b). A "law" for purposes of the Texas Whistleblower Act is a state or federal statute, a local governmental entity's ordinance, or a rule adopted under a statute or ordinance. *Id.* § 554.001(1) (Vernon 2004). "Good faith" means that (1) the employee believed that the conduct reported was a violation of law (the "honesty in fact" element) and (2) the employee's belief was reasonable in light of the employee's training and experience (that is, that a reasonably prudent employee in similar circumstances would have believed the facts as reported were a violation of law). *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320–21 (Tex. 2002) (quoting *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)).

TDFPS moved for summary judgment on the grounds that Groomer could produce no evidence of "good faith" in making her reports of violations of laws; could not identify any "law(s)" she actually and objectively believed TDFPS violated; and could produce no evidence to show that the reports were made to an "appropriate law enforcement authority."

Groomer attached four pages of her own deposition to her response. In those four pages, she testifies about the denial of a grievance she filed after being forced to involuntarily transfer to another office and her medication (Effexor) and attorney's fees. However, she did not raise the involuntary transfer in her original petition, and no subsequent petitions are reflected in the record.

Groomer also testifies in those four pages that Supervisor Sells wrote her up "for not submitting [her] travel in a timely manner" and that she wrote a response and asked for it to be part of her file but did not file a grievance. She testified that she did not know what law was violated by loaning money to Sells and that she reported it in a letter to Sells, Ferrari, Wright, Ted Keating, the Civil Rights Office, Joyce James, Kerry Cochrill, and Thomas Chapman. She explained that Kerry Cochrill "is head of the—I don't know. He's our executive director or whatever, and [Joyce] James worked under him."

8

Groomer attached seven pages of her deposition to her amended response, of which four were the same that had been attached to her first response. The remaining three new pages contained her testimony that she did not recall what she had said in the letter or what else she had complained about, "[j]ust that there were things going on in that office that should be addressed."

With regard to Supervisor McClacherty, she testified that the office furniture McClacherty allegedly took were chairs for a Thanksgiving dinner party. However, Groomer could only testify that McClacherty sent an email that said she was taking them; she testified that she did not know how many chairs, or what kind, or whether McClacherty returned them, or whether McClacherty was written up for taking them. She merely stated, "I can't imagine someone admitting to taking state property if they didn't." And with regard to McClacherty's alleged use of state employees on state time to help her move into her apartment, Groomer gave the following testimony:

> I know there's a—there's a letter that—a conference that she had with me, and it's in documents that I've supplied. So it's in that. All the information is in it where she's talking about Suzie Perkins and I believe Courtney—I don't remember Courtney's last name—that they came during their lunch hour. She didn't mention Jeremy, but Jeremy told me.

9

She testified that Jeremy did not go to help McClacherty move on his lunch hour, but she did not know when he went. The documents, including her letters, that she referred to were apparently not entered into evidence at her deposition and were not attached to either her response or amended response.

Groomer's testimony fails to establish that she made her report on her loan to Sells to an "appropriate law enforcement authority," or to describe how Sells "extorted" the loan from her in violation of some unidentified law, or how Cochrill, the "executive director or whatever," or the other individuals that she named would be authorized to investigate or prosecute Sells if Sells did extort a loan from her. *See Needham*, 82 S.W.3d at 319–22. Groomer's testimony also fails to establish whether McClacherty actually violated any law—she testified that she did not know if McClacherty had actually taken any chairs from the office and that she did not know when another employee allegedly helped McClacherty move into her apartment. The deposition pages attached to her response do not indicate that she made any reports about McClacherty's activities to an "appropriate law enforcement authority." *See id.*

Based on the evidence produced by Groomer in response to TDFPS's no-evidence motion for summary judgment, we conclude that the trial court did not err by granting summary judgment for TDFPS because she failed to produce more than a scintilla of probative evidence to raise a genuine issue of material

10

fact with regard to at least one ground presented by TDFPS. *See Moore*, 981 S.W.2d at 269. Therefore, we overrule her first issue.

## V. Conclusion

Having overruled Groomer's two issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: July 2, 2009